Carolyn R. Hall, executrix, *vs.* Arthur I. Shain.

Norfolk.    December 13, 1934. — September 11, 1935.

Present: Rugg, C.J., Crosby, Field, & Lummus, JJ.

*Negligence*, Motor vehicle, Contributory, In use of way.  *Evidence*, Competency, Relevancy, Admission, Of consciousness of liability. *Practice, Civil*, Exceptions: whether error harmful.

The evidence at the trial of an action for death warranted findings that the decedent, while walking across a lighted street at night, was struck by an automobile operated by the defendant and that the defendant's operation was negligent, and did not require a finding that the decedent was guilty of contributory negligence.

At the trial of an action for the death of one alleged to have been struck by an automobile operated by the defendant, after counsel for the defendant on cross-examination of the plaintiff had elicited from him that he suspected that the decedent was struck by that automobile, it was error, prejudicial to the defendant, to admit on redirect examination and to retain over his objection, highly colored and argumen-

tative testimony by the plaintiff as to his suspicion, based partly on his knowledge but largely on hearsay and suppositions.

At the trial of an action for death alleged to have been caused by the defendant's automobile striking the decedent, the defendant's appearance and conduct after the accident could be considered by the jury as showing his consciousness of liability, and also upon the issue of the degree of his culpability.

TORT. Writ dated October 18, 1928.

The action was tried in the Superior Court before *J.J. Burns*, J. There were verdicts for the plaintiff, in the sum of $2,048 for conscious suffering and in the sum of $6,250 for death. The defendant alleged exceptions.

*R. J. Walsh*, for the defendant.

*J. M. Morrison*, (*R. N. Daley, Jr.*, with him,) for the plaintiff.

RUGG, C.J. This is an action of tort to recover damages for the conscious suffering and death of the plaintiff's testator, hereafter called the deceased, alleged to have been caused by the negligence of the defendant in the operation of his automobile on Beacon Street, near its intersection with Powell Street, in Brookline. The case comes before this court on the exceptions by the defendant (1) to the denial of his motion for a directed verdict in his favor, (2) to certain portions of the charge and (3) to the admission of testimony.

The case is somewhat unusual in that the defendant testified that he found the deceased lying in the roadway and that his motor vehicle was not connected in any way with the injuries of the deceased. No witness testified that he saw the deceased struck by a motor vehicle. There was ample testimony, which need not be narrated or summarized, to show that the injuries from which the deceased was suffering were consistent with his having been struck by a motor vehicle and that those injuries were an adequate cause for his death. *Marlow* v. *Dike*, 269 Mass. 38. There was evidence tending to show that on the evening of November 29, 1927, the defendant was driving west on Beacon Street toward his home, that he was seen by a messenger boy named Yaitanes putting the deceased into his automo-

bile, that the defendant asked help of Yaitanes, that the latter inquired whether the defendant hit the man and that the defendant replied in the affirmative. This admission was sufficient to justify a finding that the motor vehicle of the defendant struck the deceased. *Leary* v. *Keith*, 256 Mass. 157, 158. There was further evidence to the effect that the deceased left the home of the plaintiff at about 9:30 P.M. on the night in question; that shortly afterwards the deceased was picked up by the defendant nearby and taken to the MacLeod Hospital; that skid marks approximately thirty-five feet long were found leading diagonally from the intersection of Beacon and Powell streets to a point about five feet beyond the crosswalk; that the skid marks stopped directly in the rear of the defendant's motor vehicle as Yaitanes saw it on the night of the accident; that the defendant admitted that they were caused by his motor vehicle; that the body of the deceased was in the gutter just in front of the defendant's motor vehicle when he stopped; that when the motor vehicle of the defendant came to a stop it was facing diagonally to its left; that following the accident the broken pieces of the eyeglasses worn by the deceased were found just ahead of the end of the skid marks; that the speed of the motor vehicle driven by the defendant was thirty-five miles an hour; that the street was thirty-five or forty or possibly fifty feet wide at that point; that a nearby street light was lighted; that there was a clear view along Beacon Street; that the headlights on the defendant's motor vehicle complied with the law and were lighted and would show fifty to seventy-five feet ahead or more; that the defendant said that he saw the deceased when he got to the crossing; and that the defendant was very excited and nervous.

All this evidence was sufficient to support a finding that the defendant while negligently operating his motor vehicle struck and injured the deceased. *Fraser* v. *Flanders*, 248 Mass. 62, 66. *O'Keefe* v. *United Motors Service, Inc.* 253 Mass. 603. *Clark* v. *C. E. Fay Co.* 281 Mass. 240. *Conrad* v. *Mazman*, 287 Mass. 229. The speed of the motor

vehicle of the defendant in violation of the statute, the striking of the deceased in a broad street partially lighted and the lights on the motor vehicle of the defendant (*Kzcowski* v. *Johnowicz*, 287 Mass. 441, 443) were circumstances adequate to afford basis for a finding of negligence of the defendant. *Barrett* v. *Checker Taxi Co.* 263 Mass. 252. *Hennessey* v. *Moynihan*, 272 Mass. 165. *Griffin* v. *Feeney*, 279 Mass. 602. *Fayard* v. *Morrissey*, 281 Mass. 166. *Carbonneau* v. *Cavanaugh*, 290 Mass. 139.

It is plain that it could not properly have been ruled as matter of law that the defendant sustained the burden of proving contributory negligence on the part of the deceased. The only evidence bearing on that point was testimony that the deceased crossed the street and that that was the last he remembered. *O'Connor* v. *Hickey*, 268 Mass. 454, 458. *Mercier* v. *Union Street Railway*, 230 Mass. 397, 404. *Mulroy* v. *Marinakis*, 271 Mass. 421. *Legg* v. *Bloom*, 282 Mass. 303, 305.

The evidence required the submission to the jury of the issues of the negligence of the defendant and of the contributory negligence of the deceased. The motion of the defendant for a directed verdict in his favor was denied rightly. *Noyes* v. *Whiting*, 289 Mass. 270.

The exception as to evidence arose in this way: After cross-examination of the plaintiff she was asked on redirect examination, "You have been asked about suspicious circumstances . . . things with regard to Dr. Shain, his conduct, which impressed you as suspicious. Will you tell us in your own words what there was?" Subject to the exception of the defendant she was allowed to testify as follows: "The fact that Dr. Shain was so very — appeared to be so very nervous, and such a ghastly pallor; that he was so nervous, according to what he said himself, that he didn't know where this accident had happened, and he put it somewhere north of St. Mary's Street, which is a mile, well, must be a mile south of 1180 Beacon Street, I should think. Then later the next day the fact that he was so sure although Dr. Stevens was there with him and wasn't at all sure in his mind what had happened to Mr.

Read, but Dr. Shain felt sure and said so at that time, although he had no bruises, no black and blue marks, and no indications of a blow or anything of that sort; Dr. Shain was so absolutely sure that it was an automobile, whereas at that time Dr. Stevens wasn't sure what had happened to Mr. Read, and then coupled with that the fact that the night before Dr. Shain had said that an automobile had hit him, and he had sent word to me over the telephone by some woman at this hospital that she was speaking for Dr. Shain from the MacLeod Hospital, and that Mr. Read had been hit by an automobile. Then there were, of course, other things; he had said that night that those were his skid marks, and we found the glasses right by those skid marks, the glasses that the nurse had called my attention to, to the fact, or had asked me if Mr. Read wore glasses, and we found the remains of those glasses right by these very noticeable skid marks. Then the fact that Dr. Shain said that he was driving at a good pace that night and would have to skid to stop if he were going fast at any corner, and then the fact that he didn't seem to want to talk with the police. I knew that Sergeant Donovan hadn't been able to talk with Dr. Shain the second time he came to see us. Then the fact, too, that he could know right off that night if he hadn't seen the accident or anything that an automobile had hit Mr. Read.'' On motion to strike out this testimony which was not granted the trial judge said to the jury: ''You recall that on cross-examination there was some examination of Mrs. Hall as to why she should ask for a bill and yet not show any hostility, if she really was suspicious that Dr. Shain had something to do with this accident. Now, of course, her suspicions are not evidence, and this examination is just for the purpose of showing, if you believe the question, that there was nothing inconsistent in her conduct. . . . It is not her suspicions, but your findings of fact that control this case.'' This testimony was highly prejudicial. The suspicions of the plaintiff had no proper place in the trial. The witness was permitted to group in highly argumentative form a few facts within her knowledge together

with much that was necessarily merely hearsay and suppositions on her part. The jury were not instructed to disregard the testimony: it was all allowed to remain in the case. So far as appears from the record it had no relevancy to any issue. If there had been a peremptory instruction that the evidence as to suspicions of the witness be struck out and disregarded, it would be presumed that such instruction was followed by the jury, and there would have been no reversible error. *Gartland* v. *Freeman,* 277 Mass. 520, 522, 523. *Stricker* v. *Scott,* 283 Mass. 12, 14. *Sullivan* v. *Brabason,* 264 Mass. 276, 286. *Noel* v. *Archidacono,* 288 Mass. 20, 22. That course was not followed. It cannot rightly be said that this was harmless error. G. L. (Ter. Ed.) c. 231, § 132. The mere circumstance that the cross-examination without objection touched upon "suspicions" of the plaintiff did not warrant the course here pursued.

After the jury were fully instructed on the various aspects of the case counsel on behalf of the defendant stated: "I think I want to take an exception to that part of your Honor's charge where you said you could take into account the Doctor's admissions as bearing on culpability; that general statement. Then where you said also, I think it was the pallor of the Doctor, some probative force of the conduct of the Doctor after the accident, and the same as to the statement of the defendant it happened in Boston, and whether his conduct indicated that there was consciousness of responsibility, whatever that language was. I don't know just what part it was, — in the latter part of your charge, where you stated also about the probative force of the conduct of the Doctor after the accident. There was a general statement. I think with that, that is all I have, your Honor." This was hardly a proper way to take exceptions to a charge. *Connelly* v. *Fellsway Motor Mart, Inc.* 270 Mass. 386, 391. Passing that, the exception may be thought to apply to these portions of the charge: "Now, the evidence that the defendant's automobile struck the plaintiff's testator comes from the testimony of Yaitanes, and also whatever probative force there may be in the conduct of the defendant after the accident and, of course,

even after you find that there has been a collision between the Doctor's car and the deceased, you must also make another finding, namely, that the Doctor was acting carelessly. Now, there was some evidence as to the Doctor's condition, that he was pale and nervous and he changed color. That in and of itself is not evidence, but it might be considered by you on the question of the defendant's conduct with reference to whether or not that, taken in connection with the other testimony, indicated consciousness of liability. So also with reference to the statement of the defendant that the accident happened in Boston, not in Brookline. That in and of itself is not evidence, but that may be taken into account by you in determining whether or not he has stated a falsehood, and whether or not his conduct after the accident indicated that he had struck Mr. Read and that he was conscious of liability for having struck him. Now, as far as the testimony of going to the police station or failing to go to the police station, the Doctor's story was that he called up the Back Bay station because the body was within the confines of Boston. There is testimony which tends to show that the reason he gave shortly after the accident was because he thought the accident occurred at St. Mary's Street. That is, of course, important on the question of the credibility of the Doctor, and the credibility of the other witnesses, but as to whether or not the Doctor was avoiding Sergeant Donovan you will have to first make a finding before that evidence becomes of any importance, that the Doctor knew that Sergeant Donovan was after him, and that he took affirmative steps to avoid him, and that such affirmative steps to avoid him were done because of a feeling that he was responsible for this accident. The fact that the Doctor took no steps to get in touch with the police is again subject to the qualification that it is unimportant unless what the Doctor failed to do he failed to do because of a consciousness of guilt."

It cannot be seriously contended that the conduct of a defendant is not admissible against him in civil or criminal proceedings as tending to show consciousness of liability. *Banfield* v. *Whipple*, 10 Allen, 27, 31. *Labrie* v.

*Midwood,* 273 Mass. 578, 580. The contention of the defendant is that certain acts to which reference was made in the charge were not susceptible of being found to be admissions by conduct, could not rightly be considered as evidence of a collision between the motor vehicle of the defendant and the deceased and were not properly to be given weight in assessing damages on the count for death. There is no substantial merit in these contentions. The attention of the jury was directed to conflicting testimony given by the plaintiff and by the defendant respecting the excited condition of the latter and the instruction was to determine whether the explanation of the defendant was sufficient. *Commonwealth* v. *Devaney,* 182 Mass. 33, 36. The appearance of the defendant with all the other evidence would support an inference of consciousness of liability for having struck the deceased. *Commonwealth* v. *Borasky,* 214 Mass. 313, 319. *Cohen* v. *Henry Siegel Co.* 220 Mass. 215, 219. Wigmore on Evidence (2d ed.) §§ 272, 273, 278. It was made plain to the jury that the basis of culpability was conduct in connection with causing the injury to the deceased and not conduct subsequent to the injury. The case although close on this point falls within the class illustrated by *Commonwealth* v. *Merrick,* 255 Mass. 510, 514, *Commonwealth* v. *Desatnick,* 262 Mass. 408, 413, *Richardson* v. *Travelers Fire Ins. Co.* 288 Mass. 391, 396, *Murphy* v. *Bay State Wine & Spirit Co.* 212 Mass. 285. The exception to the charge must be overruled.

*Exceptions sustained.*